**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mona Lisa Lacy,<br><br>    Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-04117-PHX-SPL<br><br>**ORDER** |

  Plaintiff Mona Lisa Lacy ("Plaintiff") seeks judicial review of the denial of her application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). Plaintiff argues that the Administrative Law Judge ("ALJ") erred by according inadequate weight to the opinion of her treating physician and rejecting her subjective complaints (Doc. 14 at 11, 20).

  A person is considered "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's decision to deny benefits should be upheld unless it is based on legal error or is not supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted). "It means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The Court must review the record as a whole and consider both the evidence that supports and the evidence that detracts from the ALJ's determination. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## I. DISCUSSION

### A. PLAINTIFF'S SYMPTOM TESTIMONY

Plaintiff argues the ALJ erred in rejecting her symptom testimony (Doc. 14 at 20–26). In evaluating a claimant's testimony, the ALJ is required to engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must decide whether the claimant has presented objective medical evidence of an impairment reasonably expected to produce some degree of the symptoms alleged. *Id*. If the first test is met and there is no evidence of malingering, the ALJ can reject the testimony regarding the severity of the symptoms only by providing specific, clear, and convincing reasons for the rejection. *Id*. Here, the ALJ found Plaintiff's medical impairments could reasonably be expected to cause the alleged symptoms but concluded that her statements as to the intensity or limiting effects of those symptoms were not entirely credible (AR 22).[1]

"In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Additionally, "general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). Here, the ALJ found that: (1) the medical evidence was inconsistent with Plaintiff's statements, (2) inconsistencies between her statements and conduct, and (3) inconsistencies between her statements and doctor opinions regarding her condition. (AR 30–31) At the outset, it appears that the ALJ discounted Plaintiff's testimony because it was not "entirely consistent with the medical

---

[1] Administrative Record (Doc. 10).

2

evidence and other evidence in the record." (AR 22) This is a standard which is much higher than what is required on the part of a claimant. Indeed,

> the claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Nor must a claimant produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.*

*Garrison*, 759 F.3d 995, 1014–15 (9th Cir. 2014). Plaintiff's medical records did not need to *fully* support the severity of her reported symptoms.

The ALJ then looked to Plaintiff's earning records and noted that she had not worked for several years prior to the alleged onset date. (AR 22) The ALJ further noted that Plaintiff stated she had stopped working in 2009 due to her condition but that there had been no treatment for the condition until August 2014 and Lacy had reported to a treating mental health provider that she had not worked in seven years due to raising her children. (AR 22) The ALJ concluded that the conflicting reasons raised questions as to whether her unemployment was due to her alleged impairments or other non-medical reasons. (AR 22) During her testimony, Plaintiff testified that she had stopped working because she was laid off, not because of her impairment. (AR 51) The Court notes that the record indicates that Plaintiff began to experience severe symptoms of fibromyalgia in August and September 2014, when she sought medical attention regularly because of the symptoms, which is around the same time she claimed disability. (Doc. 14 at 3–7) The ALJ's citation to one statement from 2009 is not specific, clear, and convincing evidence to discount Plaintiff's testimony.

The ALJ then discussed the medical records at length but never specifically links them to any particular symptom testimony. The ALJ mentions reports that Plaintiff was a busy stay at home mother of four, and that she reported she had "good" ability to prepare food, bathe, manager her money, shop, and take her medications. (AR 31) The ALJ reasoned that all those statements were inconsistent with her allegations of "disabling pain

3

and limitations." (AR 31) Without more specificity from the ALJ, the Court finds that the ALJ failed to meet her burden of clearly identifying the specific parts of Plaintiff's testimony she found not credible and why. Accordingly, the Court finds that the ALJ committed legal error in assessing Plaintiff's testimony.

### B. MEDICAL OPINION OF JOSEPH NOLAN

Plaintiff also argues that the ALJ accorded inadequate weight to the opinion of Plaintiff's treating rheumatologist, Joseph W. Nolan, M.D. (Doc. 14 at 11–20).

> To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.

*Bayliss*, 427 F.3d at 1216 (internal citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ provided four reasons for giving Dr. Nolan's October 2014 opinion little weight: (1) the assessment was "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion;" (2) Dr. Nolan treated Plaintiff only three times prior to completing the assessment and the ALJ concluded that "there [was] no evidence that such restrictions persisted;" (3) the assessment was inconsistent with Plaintiff's "reports of exercising regularly and being a busy stay at home mom of four several weeks prior to when the opinion was rendered;" and (4) the assessment was "inconsistent with her essentially normal physical examination findings, including that she had no muscle atrophy and a 5/5 strength. (AR 29)

### 1. CONCLUSORY ASSESSMENT

First, the ALJ gave Dr. Nolan's assessment and opinions therein little weight because she found the assessment quite conclusory. (AR 29) The ALJ noted that Dr. Nolan's opinions were that "[Plaintiff] would experience pain and/or fatigue sufficiently

sever to interfere with attention and concentration constantly, that she would experience deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner on a constant basis. (AR 29; AR 349–51) Further Dr. Nolan opined that [Plaintiff] would not be able to sustain work on a regular or continuing basis." (AR 29; AR 349–51) Those opinions were in the form of checked boxes on a checklist which Dr. Nolan filled out. (AR 349–51) The ALJ gave no further explanation as to why she thought the assessment was conclusory. In reviewing the assessment (entitled "Fibromyalgia Residual Functional Capacity (RFC) Questionnaire), the Court finds that it does not seem conclusory: the first page has several boxes with a list of symptoms for the physician to check and out of the 18 symptoms available, Dr. Nolan checked 15 of the boxes. (AR 349–51) Dr. Nolan also checked the boxes stating that the patient's impairments either have lasted 12 months or can be expected to last the next 12 months and that the patient suffered pain. (AR 349–51) Without more explanation from the ALJ, the Court cannot truly discern why the ALJ found the opinions in the form to be conclusory. The Commissioner's counsel argues that the ALJ properly discounted the opinions contained in the questionnaire because it was in the form of a check-the-box form lacking any narrative explanation. (Doc. 20 at 17) It is true that the ALJ may properly reject such opinions in the form of a check-the-box document. *See, e.g. Molina v. Astrue*, 674 F.3d 1104, 1111–12 (9th Cir. 2017). But such "flat-out" rejections are permissible if the ALJ also determined that the opinions therein do not have supportive objective evidence, are contradicted by other statements and assessments of the claimant's medical condition, and are based on the claimant's subjective descriptions of symptoms. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The Court finds that the first requirement is not met here.

Furthermore, "[i]n Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996), *superseded by statute on other grounds* (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983)). "If the ALJ thought he needed to know the basis of [the treating physician's] opinions in order to evaluate them, he had a

duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them." *Id.* The ALJ did not inquire further as to the basis for Dr. Nolan's opinions in the checklist. The record also contains objective evidence supporting the opinions in the checklist as the ALJ herself acknowledged. Indeed, the ALJ noted in her decision all the instances where Plaintiff reported the symptoms to Dr. Nolan. (AR 23–24) The record contains progress notes by Dr. Nolan reporting his opinion at each of Plaintiff's visits. (AR 386, 387, 389–90) The only contradictory evidence the ALJ relied on is contained in her third and fourth reasons for giving little weight to Dr. Nolan's opinions and will be addressed below. Lacking any specific support to simply disregard the opinions in the form of a checklist, the Court finds that the ALJ's first reason to discount Dr. Nolan's opinion was legal error.

## 2. LENGTH OF TREATMENT BY DR. NOLAN

The ALJ also gave Dr. Nolan's opinions little weight because he only saw Plaintiff three times before filling out the assessment. (AR 29). In determining the weight to give a treating source's medical opinion, the ALJ must consider the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, specialization, and other relevant factors. *See* 20 C.F.R. § 404.1527(c).

Although the length of the treatment relationship is one consideration, the Court finds that, absent a weighing of the remaining factors, it alone does not establish a sufficient and legitimate reason to give Dr. Nolan's opinion little weight. *See Price v. Colvin*, 635 F. App'x 379, 380 (9th Cir. 2016). Additionally, the Ninth Circuit has considered and given great weight to opinions of physicians who had seen a claimant for less time than Dr. Nolan, concluding they had attained the status of treating physician. *See, e.g.*, *Le v. Astrue*, 529 F.3d 1200, 1201–02 (9th Cir. 2008) (reasoning that the physician who had treated claimant five times in three years had been found by the District Court to be a treating physician for purposes of 20 C.F.R. § 404.1527); *Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. 1994) (holding that a physician who saw the claimant twice in a 14-month period was his

treating physician). Under those decisions, the Court finds that the ALJ's second reason for giving Dr. Nolan's opinion little weight was legal error.

The ALJ also mentioned that there was no reason to believe the restrictions outlined in Dr. Nolan's opinions had persisted. (AR 29) The Commissioner's counsel argues that the ALJ reasonably concluded that "there was no indication that the restrictions found by Dr. Nolan . . . would persist." (Doc. 20 at 17) This is quite different from the language used by the ALJ. The ALJ stated that "there is no indication to believe that the restrictions persisted." (AR 29) The ALJ's choice of words and plain meaning of such words show that the ALJ meant that she reviewed the record and that she concluded there was no evidence to show the restrictions Dr. Nolan identified had persisted after Dr. Nolan gave such opinion. The ALJ did not mean that there was no evidence at the time of Dr. Nolan's opinion that the restrictions would persist. With that clarification in mind, the Court finds that there is ample evidence that the restrictions persisted. Indeed, Lacy returned to visit Dr. Nolan several times during the relevant period and Dr. Nolan identified multiple positive tender points at each treatment visit. (Doc. 14 at 3–7) Accordingly, the Court finds that the ALJ's finding that there is no evidence the restrictions continued is unfounded.

### 3. PLAINTIFF'S REPORTS OF HER LIFESTYLE

The ALJ also reasoned that Dr. Nolan's opinions of restrictions were inconsistent with Plaintiff's own "reports of exercising regularly and being a busy stay at home mom of four several weeks prior to when the opinion was rendered." (AR 29) The ALJ did not cite any exhibit or other material in the record on which she based this reasoning, which makes it impossible for the Court to assess the basis for the reasoning. The statement is also very vague as "several weeks" can be interpreted in many different ways. The Commissioner's counsel points to page 340 of the administrative record in support of this statement. Besides the fact that the ALJ should have cited such evidence herself, such evidence still fails to satisfy the burden on the ALJ to justify her opinion. The note cited contains the statement that "the patient is a busy stay at home mom with 4 children" but no other statement as to what it entails. (AR 340)

It is true that a claimant's ability to engage in daily activities that are incompatible with the severity of symptoms described by a treating physician may support the rejection of that opinion. *Ghanim*, 763 F.3d at 1162 (9th Cir. 2014); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th Cir. 1999). However, the ALJ did not discuss her reasoning any further. Particularly, the ALJ did not identify which daily activities or aspects of being a "busy stay at home mom of four" conflicted with or exceeded the restrictions identified by Dr. Nolan. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (concluding that ALJ erred by relying on the claimant's activities to discount her treating physician's opinion where there were no details about what the activities involved or the extent of those activities); *Padilla v. Comm'r of Soc. Sec. Admin.*, 2018 WL 4770807, at *7 (D. Ariz. Oct. 3, 2018); *see also Ong v. Comm'r of Soc. Sec. Admin.*, 2018 WL 3323169, at *16 (D. Ariz. July 6, 2018) (finding that "the ALJ's conclusory assertion that the limitations Dr. Roberson assessed were inconsistent with Plaintiff's activities of daily living does not satisfy the standard required for rejecting an examining physician's opinion" because the ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct."). The ALJ did not explain why her interpretation was correct as opposed to Dr. Nolan's. Accordingly, this reasoning for discounting Dr. Nolan's opinion was also in error.

### 4. PLAINTIFF'S PHYSICAL FINDINGS

The last reason the ALJ gave to discount Dr. Nolan's October 2014 opinions of Plaintiff's restrictions was that it was "inconsistent with [Plaintiff's] essentially normal physical examination findings, including that she had no muscle atrophy and 5/5 strength." (AR 29) This reasoning is in error for two reasons: (1) it is based on "cherry-picking" of the records, and (2) the ALJ cannot substitute her judgment for the one of a medical doctor when interpreting medical evidence.

First, the ALJ cited to one visit where it appears that Plaintiff had no muscle atrophy and 5/5 strength. Looking further into that record, it does look like the ALJ picked that statement out of the progress note but did not look to the rest of the note. Indeed, the visit

was with Vivian Perlman, a physician assistant at Barrow Epilepsy, and Plaintiff had presented for issues with migraines. (AR 340) Although PA Perlman did write the statement the ALJ referred to, she also wrote that "motor strength is equal, but limited by pain." (AR 341) This is exactly the type of "cherry-picking" of the records which an ALJ cannot engage in. *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016).

Second, and more importantly, it is well-settled that "ALJs cannot usurp the role of doctors when interpreting medical evidence." *Leusch v. Beryhill*, 2019 WL 176768, at *6 (D. Ariz. Jan 11, 2019) (citing *Trevizo*, 871 F.3d at 683). The Court cannot affirm the ALJ's opinion simply by isolating a specific quantum of supporting evidence out of a mixed and complex record, about which the ALJ failed to make comprehensive, specific, and legitimate findings. *Id.* (citing *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)). The Ninth Circuit has expressly recognized that

> [f]ibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Typical symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue." *What is unusual about the disease is that those suffering from it have "muscle strength, sensory functions, and reflexes [that] are normal."* Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms. There are no laboratory tests to confirm the diagnosis. *Id.*

*Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (internal quotations omitted) (emphasis added). With that background and definition in mind, the Court finds that the ALJ's fourth reason to discount Dr. Nolan's opinions was legal error because it directly contradicts medical criteria for fibromyalgia without explaining why the ALJ's opinion and not Dr. Nolan's is correct.

The ALJ also gave little weight to Dr. Nolan's April 2017 assessment for similar reasons, which the Court will not analyze again. Additionally, the ALJ stated that the 2017

9

opinions were "rendered more than 2 years after the claimant's date last insured, and Dr. Nolan did not indicate that these limitations were applicable prior to the claimant's last insured." (AR 30) This statement is in contradiction with the ALJ's previous conclusion with regards to Dr. Nolan's October 2014 assessment where the ALJ reasoned that "there was no indication such restrictions persisted." (AR 29) The ALJ acknowledged that some restrictions were present in October 2014 but later, in discounting Dr. Nolan's 2017 assessment relies on the assertion that Dr. Nolan did not express that the restrictions were present in October 2014. In both instances, Dr. Nolan opined that Plaintiff would not be able to sustain work on a regular and continuing basis. (AR 351, 489–91) The Court notes that there was an additional questionnaire filled out by Dr. Nolan in 2017, which quantifies specific restrictions such as "stand or walk less than 2 hours in an 8-hour workday." (AR 486–88) It might be that the ALJ referred to those restrictions which Dr. Nolan did not link to the relevant period and the Court finds that the ALJ was correct in discounting that part of the 2017 assessment. It still does not justify giving little weight to the opinions contained in the rest of the assessment.

### C. MEDICAL OPINION OF DR. SAPIN

The ALJ accorded great weight to the opinion of one of the state agency's medical consultant, Dr. Neil Sapin, M.D. (AR 30) Dr. Sapin completed his review of the records as part of the reconsideration determination. (AR 98–100) Although Plaintiff argues that it is unclear why the ALJ accorded great weight to this opinion when it accorded little weight to the opinion of another state agency medical consultant, Dr. Luther Woodcock, M.D., the Court finds that the ALJ's reasoning is clear. The ALJ stated that she gave little weight to Dr. Woodcock's opinion because he concluded that Plaintiff suffered no severe impairment, which was contrary to the record. (AR 30) Then, the ALJ stated that for the same reasons, meaning the evidence in the record that Plaintiff had a severe impairment, she accorded great weight to the opinion of Dr. Sapin that Plaintiff could perform light work. (AR 30) The ALJ credited Dr. Sapin's opinion because she believed it matched the records: that Plaintiff had a severe impairment *but* could perform some light work.

There are a couple of points regarding Dr. Sapin's opinion and the weight the ALJ should accord to such opinion which are worth mentioning. First, Dr. Sapin's specialty code, 19, indicates he was an internist, and not a rheumatologist, which is the relevant specialty for a case of fibromyalgia. (AR 100) *See Reddick v. Chater*, 157 F.3d 715, 727 (9th Cir. 1998) (relying on the Program Operations Manual System ("POMS") definitions regarding a condition); PROGRAM OPERATIONS MANUAL SYSTEM, "MEDICAL SPECIALTY CODES," DI 24501.0004(B), https://secure.ssa.gov/apps10/poms.nsf/lnx/0424501004 (last visited March 13, 2020). It is hard to see how the opinion of a non-treating internist would carry more weight than the opinion of a treating rheumatologist on a case of fibromyalgia, but this again returns to the ALJ's error is discrediting Dr. Nolan's opinion more than an error in weighing Dr. Sapin's opinion. Second, Dr. Sapin was a non-treating physician who reviewed the record up to August 7, 2015. This poses some question as to the weight to give his opinion given that he only reviewed part of the full record. However, the Court finds that the ALJ did not commit error in weighing the opinion of Dr. Sapin given his review of most of the relevant record and besides his lack of specialization in rheumatology. However, the Court also finds that such opinion alone is not enough to support a denial of benefits when viewing the record as a whole and for the reasons stated in this opinion. Finally, the Court notes that the vocational expert concluded that limitations consistent with Plaintiff's reported symptoms would preclude work. (AR 65–66, 69)

## II. CONCLUSION

It is in this Court's discretion to reverse and remand for an award of benefits or further proceedings. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). The credit-as-true rule requires a court to remand for calculation and award of benefits rather than a remand for further proceedings when: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at

1020. However, "even [if] all conditions of the credit-as-true rule are satisfied," a court may remand for further proceedings if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Here, all three conditions of the credit-as-true rule are met: (1) the ALJ failed to provide legally sufficient reasons for rejecting Dr. Nolan's opinion and Plaintiff's subjective testimony; (2) the record has been fully developed, and as a result, a remand for further proceedings would not be useful; and (3) based on the vocational expert's testimony, the ALJ would have been required to find Plaintiff disabled had she credited Dr. Nolan's opinion. Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated and remanded** to the Commissioner of the Social Security Administration for an award of benefits.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 18th day of March, 2020.

Honorable Steven P. Logan
United States District Judge

12